# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLLOCK COMPANY, *et. al*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 12-162 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons stated below, Defendant's Motion to Dismiss (Doc. 33) will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Anthony and Christopher Kordell (the "Kordells"), shareholders and officers of Plaintiff Rollock Company ("Rollock"), owned a tract of land in Somerset, Pennsylvania, which was leased to Rollock for the operation of its scrap metal business. Am. Compl. (Doc. 13) at ¶ 10. On September 11, 2001, the crash of Flight 93 occurred adjacent to this tract of land, approximately three hundred yards from Rollock's principal place of business. Id. at ¶ 1. Plaintiffs allege that Rollock received a notification from the IRS in early 2002, which designated Rollock as a September 11th case, and excused the corporation from filing employment tax returns and depositing employee withholdings. Id. at ¶ 30.

Relying on that notice, Rollock did not remit employee withholdings from the period of January 1, 2002, through September 30, 2009. Id. at ¶ 33. This notice allegedly was stolen from Plaintiffs' office in 2005, and never was recovered. Id. at ¶ 32. Plaintiffs allege that they did not receive any further correspondence from the IRS until 2009, when the IRS called to inquire as to the status of Rollock's tax returns. Id. at ¶ 35. Thereafter, Rollock filed its employment tax

returns, and made a $550,000 payment to the IRS in September 2009 with instructions to apply the payment to its outstanding tax liability. Id. at ¶¶ 35, 39. In March 2010, Rollock received notice from the IRS that its outstanding tax liability, with penalties, still amounted to over $600,000. Id. at ¶ 40. The following month, Rollock filed an IRS Form 843 to request an abatement of interest and penalties. Id. at ¶ 41.

In October 2010, Rollock filed an IRS Form 656, Offer in Compromise ("OIC"), where Rollock offered a proposed payment plan of $10,000 per month. Id. at ¶ 42. Shortly thereafter, the Kordells, as shareholders of Rollock, received notice of a Trust Fund Recovery Penalty Assessment from the IRS, which the Kordells subsequently appealed. Id. at ¶¶ 43-44. This appeal allegedly resulted in a settlement agreement where the Kordells made a $219,000 payment to the IRS. Id. at ¶ 44. Plaintiffs allege that the IRS acknowledged the 2002 notice during these settlement negotiations, but would not respond to Plaintiffs' request for a copy of the document. Id. at ¶ 45.

Thereafter, the 2010 OIC was rejected, and Rollock submitted a second OIC in June 2011, which the IRS also rejected. Id. at ¶¶ 46-47. Regardless, Plaintiffs allege that Rollock continued to make monthly payments to the IRS, and at the time that the amended complaint was filed, Plaintiffs had paid approximately $1,057,000 towards Rollock's employment tax liability. Id. at ¶¶ 48-49. The IRS, however, issued a notice in July 2012, stating that Rollock still owed $876,000 in taxes, penalties, and interest. Id. at ¶ 51. Further, in September 2012, the IRS informed Plaintiffs that their 2011 federal income tax refund would be applied to their default for the 2003 tax year. Id. at ¶ 53. Plaintiffs allege that the 2003 tax year is closed, and therefore filed an appeal with respect to this determination in October 2012. Id. at ¶¶ 54-55.

As a result of these events, Plaintiffs Anthony Kordell, Christopher Kordell and Rollock Company, (collectively, the "Plaintiffs"), have filed a seven-count complaint against the United States of America to "seek recovery of taxes, penalties and interest erroneously, improperly and illegally assessed and collected." Id. at ¶ 1. Specifically, Counts I through VI of the Complaint seek a "refund" of Plaintiffs' overpayment under different theories of liability, and Count VII seeks relief under the Declaratory Judgment Act. Defendant, the United States of America, (hereinafter, the "Government"), filed the outstanding Motion to Dismiss (Doc. 33) on the grounds that this Court lacks subject matter jurisdiction. Plaintiffs have filed a response in opposition (Doc. 40), and the Government has filed a Reply (Doc. 41).

## ANALYSIS

The Government brings this Motion to Dismiss under Rule 12(b)(1). Specifically, the Government argues that this Court lacks subject matter jurisdiction because: (1) Plaintiffs did not file a claim with the IRS for a refund, which is a jurisdictional prerequisite to suit; and (2) the Declaratory Judgment Act specifically bars the Court from entering the relief sought by Plaintiffs in Count VII. Def.'s Br. in Supp. (Doc. 34) at 3.

The Government is making a factual attack on the Court's subject matter jurisdiction under Rule 12(b)(1), as it is challenging the Court's "very power to hear the case." Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Accordingly, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. Moreover, the Court may consider evidence beyond the pleadings and is not required to take all allegations in the complaint as true. Id.; see also Gould Electronics Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Plaintiffs bear the burden of proving that jurisdiction does in fact exist. Mortensen, 549 F.2d at 891.

### A. Refund Requirement

First, the Government argues that this Court lacks subject matter jurisdiction over the complaint because Plaintiffs failed to file a refund claim with the IRS before bringing suit. District Courts have original jurisdiction of "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346. However, § 7422(a) of the Internal Revenue Code provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added). This refund requirement was "designed to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue, to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors." United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 11 (2008) (internal citations omitted).

While the IRS provides a specific refund form for taxpayers to utilize, "it has long been recognized that an informal claim for refund will suffice." D'Amelio v. United States, 679 F.2d 313, 315 (3d Cir. 1982). The Court of Appeals for the Third Circuit has recognized, however, that a "minimum amount of communication" must take place. Id. Specifically:

> If a taxpayer submits to the Internal Revenue Service some sort of written instrument which informs the administrative agency that the taxpayer believes that he has been subjected to an erroneous or illegal tax exaction, *and that he desires a refund or credit because of such action*, this is sufficient.

Id. (emphasis added) (citing Barenfeld v. United States, 442 F.2d 371, 374 (Ct. Cl. 1971).

Here, it is undisputed that Plaintiffs did not file a formal refund claim using the designated IRS form.[1] However, Plaintiffs argue that since their first correspondence with the IRS in September 2009, they have had "numerous written and verbal communications with IRS officials in a multitude of different offices." Pl.'s Br. in Opp. (Doc. 40) at 10. Specifically, Plaintiffs assert that there were "numerous appeals, written correspondence and settlement discussions" where they "consistently and repeatedly told IRS officials that they should not be liable for any interest or penalties" because of the notice they received in 2002. Id. at 9. Plaintiffs argue that this "extraordinary level of communication certainly provided the IRS with notice of the nature of the claim and provided the IRS with more than ample opportunity to allow a full and fair investigation of the claim." Id. at 10.

Despite having the burden of proving subject matter jurisdiction, Plaintiffs have failed to attach any affidavits or evidence of these alleged communications to their Response. Therefore, the only relevant evidence in the record consists of the following from Plaintiffs' Amended Complaint and from the Government's brief in support of its Motion to Dismiss: the settlement agreement between the Kordells and the IRS; the Form 843 requesting an abatement; and letters sent to Rollock from the IRS.[2] An examination of these documents provides further support for the Government's assertion that Plaintiffs did not request a refund before bringing this suit. Specifically, the settlement agreement between the Kordells and the IRS did not result in a

---

[1] Plaintiffs filed a Form 843 in April 2010, which formally requested an abatement of penalties and interest. Am. Compl. (Doc. 13) at ¶ 41. While this form could also have been used to request a refund, Plaintiffs acknowledge that their form "clearly requested an abatement" and they were "uncertain whether they needed to separately request a refund." Pl.'s Br. in Opp. (Doc. 40) at 10.

[2] Plaintiffs also attached a "Relocation Agreement" to their Amended Complaint. Am. Compl. (Doc. 13, Ex. B). However, this agreement dealt with the relocation of Rollock's business, and does not contain any reference to Rollock's tax liability.

refund, but rather in the Kordells paying an additional amount towards Rollock's tax liability. See Am. Compl. (Doc. 13, Ex. A). The copy of the Form 843 clearly indicates that the Plaintiffs only formally requested an abatement of interest and penalties, not a refund. Def.'s Br. in Supp. (Doc. 34, Ex. A). The two letters from the IRS informed Rollock that it was denying their request for penalty adjustment. Def.'s Reply Br. (Doc. 41, Exs. B & C). These letters explicitly informed Plaintiffs that their next options were to appeal the penalty, or pay the penalty and then filed a refund claim. There is no evidence in the record that Plaintiffs subsequently filed such a claim.

While Plaintiffs cite to several other communications that they had with the IRS over the past few years, Plaintiffs fail to articulate how any of these communications informed the IRS that they desired a refund. For example, Plaintiffs provided Offers in Compromise to the IRS in 2010 and 2011, but these were a proposed plan for future payments, not requests for refunds of past payments. Am. Compl. (Doc. 13) at ¶¶ 42, 47. Similarly, Plaintiffs made several requests for an accounting and filed an appeal of the IRS's decision to apply their 2011 refund to their 2003 tax liability. Id. at ¶¶ 52, 55. However, Plaintiffs do not allege that these communications requested a refund, and therefore these communications cannot serve as the basis for an informal refund claim. See D'Amelio, 679 F.2d at 315 (finding that a request to the IRS for information was not an informal refund request because it only "gave notice to the government that the [plaintiff] might someday assert a claim for a refund.").

In sum, there is absolutely no indication that Plaintiffs, during any of their communications with the IRS, ever articulated to the IRS that they desired a refund or a credit. Accordingly, the Court finds that Plaintiffs have not established that the "minimum amount of communication" took place to qualify as an informal refund claim. Id. Therefore, the Court

lacks subject matter jurisdiction over any claims in the Complaint that seek "recovery of *any* internal revenue tax alleged to have been *erroneously or illegally assessed or collected*" under § 7422(a). 26 U.S.C. § 7422(a) (emphasis added).

While Count I is the only count in the Amended Complaint labeled as a "Refund" claim, Counts II through VI also explicitly seek a refund or return of Plaintiffs' overpayment under different theories of liability.[3] Regardless of the different labels on these claims, they are still clearly covered by the broad language of § 7422(a). Therefore, the failure to file an administrative claim for a refund deprives this Court of subject matter jurisdiction over Counts I through VI of Plaintiffs' Amended Complaint.

**B. The Tax Exception in the Declaratory Judgment Act**

Next, the Government argues that the Court lacks subject matter jurisdiction over Count VII, the only remaining claim in the Complaint, because the relief sought by Plaintiffs is barred by the tax exception to the Declaratory Judgment Act. The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986 . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . .

28 U.S.C. § 2201 (emphasis added). Count VII asks the Court to "determine and adjudicate the rights and liabilities of the parties hereto with respect to the settlement agreement;" and also seeks "a declaration that the Plaintiffs have remitted all outstanding Employment Tax due for the

---

[3] Specifically, Counts II through VI are labeled as follows: Count II: Replevin; Count III: Breach of Contract; Count IV: Negligent Misrepresentation; Count V: Reasonable Cause; and Count VI: Promissory Estoppel. These claims all assert that the Taxpayers are owed a refund due to the representations that the IRS allegedly made in the 2002 Notice or during settlement negotiations. However, all of these counts explicitly seek the same relief sought in Count I: "a refund [or return] of [the Plaintiffs'] overpayment plus interest, costs and such attorneys' fees as are allowable by law." Am. Compl. (Doc. 13) at ¶¶ 62, 67, 73, 87, 90, 98.

tax periods in controversy and that all penalties and interest be abated." Am. Compl. (Doc. 13) at ¶ 108.

The settlement agreement that Plaintiffs ask the Court to interpret is between the Kordells and the IRS. Specifically, the Kordells agreed to the assessment and collection of several Trust Fund Recovery Penalties, due to Rollock's failure to pay its federal employment taxes. See Am. Comp. (Doc. 13, Ex. A). As a result, any controversy, and necessarily any determination by the Court, with regard to this agreement would clearly be "in respect to Federal taxes." Accordingly, the relief that Plaintiffs seek in Count VII are exactly the types of determinations explicitly exempted from the Declaratory Judgment Act, and therefore the Court lacks subject matter jurisdiction over this remaining count in the Complaint.

## II. ORDER

For the reasons stated above, Defendant's Motion to Dismiss (Doc. 33) is **GRANTED.** The Amended Complaint (Doc. 13) is hereby **DISMISSED** for lack of subject matter jurisdiction.

To the extent that Plaintiffs' refund claims are not time barred, Counts I through VI are **DISMISSED WITHOUT PREJUDICE** to the parties refiling their claims upon exhaustion of the administrative remedies set forth in 26 U.S.C. § 7422(a).

IT IS SO ORDERED.


March 6, 2014                    s\Cathy Bissoon
                                 Cathy Bissoon
                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record